IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACEY ANN BENNIS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-3114 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI[1], | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                          October 29, 2021

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Tracey Ann Bennis ("Bennis" or "Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 12); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 15); Plaintiff's Reply Brief ("Pl. Reply Br.") (Doc. 16); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 11) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ. The Commissioner seeks the entry of an order affirming that decision. For the reasons set forth below, we grant the request for review and remand for further consideration.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, therefore, she should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.     FACTUAL AND PROCEDURAL HISTORY**

Before advancing to the facts and history of this claim, we observe that this case presents procedural flaws which necessitate remand. This conclusion takes into account flaws in the medical expert's opinion due to the failure of that expert to consider the testimony of the claimant. It also takes into account the presentation of a flawed hypothetical to the vocational expert, given its failure to include the ALJ's RFC determination. Against this backdrop, we describe the factual and procedural timeline.

Bennis filed her claims for DIB and SSI on September 14, 2016, asserting a disability from May 1, 2016. In her initial filings to the state agency, she reported that she suffered from the removal of her left eye and diminished capacity of her vision that followed. She stated that she "can't see sometimes to walk … can't see to read instructions." (R. 330). She also reported that she suffered from bipolar disorder, depression, anxiety, suicidal thoughts, and a history of cervical cancer. (R. 53).

The state agency denied her claim on July 21, 2017. She then requested a hearing before an ALJ. On July 17, 2018, an ALJ considered her case and, without a hearing, found her to be disabled based on her visual efficiency of 20% or less as set forth under listing 2.03C of C.F.R. Part 404, Subpart P, Appendix 1. (R. 84). The ALJ relied on two visual tests conducted by a consultative examiner, ophthalmologist Irene Cherfas-Tyvine, M.D. The first test rated Bennis's visual efficiency at 10%, but the examiner ordered a second test due to concerns about reliability. That test, conducted one month later, found her visual efficiency to be 5%. (R. 85). Dr. Cherfas-Tyvine concluded that Bennis "might have difficulty with avoiding hazards in the workplace because of difficulty with depth perception." (R. 22). She also indicated that the results of her

testing confirmed that Bennis "is legally blind and not a legal driver or employable from an ocular standpoint." (R. 523).

The Appeals Council vacated and remanded the ALJ's decision by its own order on October 31, 2018. The Council noted a gap in supporting medical records for the period of July 10, 2017 to July 17, 2018. They also questioned the ALJ's reliance on inconsistent eye examination results and found that the ALJ did not properly account for the fact that the claimant reported that she was driving at the time of the decision. While conceding that Listing 2.03C focuses only on the claimant's vision tests, the Appeals Council noted that an ALJ's findings must comply with the requirement to consider all evidence and resolve inconsistencies. (R. 164–65).

A remand hearing was held before a different ALJ, who took testimony from a medical expert ("ME"), a vocational expert ("VE"), and Plaintiff. That medical expert, ophthalmologist Dr. Hema Sugumaran, testified by telephone that the test results obtained by Dr. Cherfas-Tyvine appeared to meet the criteria of Listing 2.03(B). However, she further opined that there was "a lack of objective medical evidence" to support a finding of such poor vision and that the test results were not consistent with operating a motor vehicle. (R. 36). Shortly after, the ME disconnected from the hearing, missing the testimony from Bennis regarding her daily activities and medical history. (R. 38). In response to a hypothetical posed by the ALJ, the VE then identified jobs existing in sufficient numbers in the national economy that Bennis could perform on a sustained basis.

The ALJ issued a decision on November 29, 2019, finding that Bennis was not disabled. (R. 25). This finding was based in part upon reports of her driving and watching television, which contradicted the results of her visual testing. (R. 22). The Appeals Council denied Bennis's request

for review on May 20, 2020, leaving the ALJ's November 29, 2019 decision as the final decision of the Commissioner and the decision under review here.

## II. STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Bennis can perform past relevant work or other jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. DECISION UNDER REVIEW

The issue before the ALJ at the 2019 remand hearing was whether Bennis was disabled under the relevant sections of the Act. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to reach his conclusion. At Step One, he found that Bennis had not engaged in substantial gainful activity since the alleged onset date of May 1, 2016. (R. 17). At Step Two, the ALJ found that Bennis's vision loss and mood disorder were severe, medically-determinable impairments. (R. 18). At Step Three, he concluded that Bennis did not suffer from an impairment or combination of impairments that satisfies the criteria of impairments listed in 20

C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). *Id.* However, that finding is not at issue in the present request for review.

The ALJ then evaluated Bennis's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). He concluded that Bennis "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to no detailed instructions and no requirement for peripheral vision and visual acuity." (R. 19). Purportedly relying upon the testimony of the VE at the hearing, the ALJ determined at Step Four that Bennis was capable of performing past relevant work, namely as a housekeeper or cleaner. (R. 23).

The ALJ also continued to Step Five, concluding in the alternative that there were other jobs in the national economy that Bennis could perform. (R. 24). At the hearing, the ALJ had asked the vocational expert (VE) to consider employment prospects for a given hypothetical individual:

> I would like you to consider, hypothetically, an individual 55 years of age with training, education, and experience as in the present case, who is generally unimpaired exertionally. Non-exertional limitations: No detailed instructions and, as a result of blindness in the left eye, there is a reduced peripheral vision, and the individual should avoid dangerous work obstacles.[2]

(R. 46–47). In response to this question, the VE opined that such an individual would be capable of performing work as a housekeeper, children's attendant, or work with similar levels of skill and exertion. This was the only hypothetical posed during this hearing. In light of her Step Four and Step Five findings, the ALJ concluded that Bennis was capable of performing work that exists in significant numbers in the national economy and thus was not under a disability as defined in the Act.

---

[2] The hypothetical referred only to "reduced peripheral vision"; however, the RFC finding that the ALJ ultimately made reflected that Bennis was limited to jobs with "no requirement for peripheral vision and visual acuity."

5

IV.     DISCUSSION

Bennis asserts that a remand is appropriate for two reasons. The first is that in coming to the decision currently under review, the ALJ posed a hypothetical question to the VE which failed to include all of the limitations identified in his RFC analysis. The second is that the ALJ violated Social Security Administration policy by relying on the testimony of a medical expert who did not hear either Bennis's testimony or a summary thereof.

We first address the issue of the ALJ's hypothetical question. The hypothetical as posed to the VE failed to include the ALJ's RFC analysis where he determined that Bennis was limited to jobs with "no requirement for peripheral vision and visual acuity." (R. 19.)  Rather, the question as posed provided limitations only for "reduced peripheral vision." (R. 46.)  Plaintiff contends that "reduced peripheral vision" is an inadequate substitute for "no requirement for peripheral vision and visual acuity."  She asserts that reliance on this flawed hypothetical renders the ALJ's conclusion concerning her ability to perform past work or other jobs to be not supported by substantial evidence. (Pl. Br. 3).

It is well-established that a hypothetical question to the VE upon which the ALJ relies must include all of a claimant's impairments that are supported by the record.  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  While the hypothetical question need not include all impairments *alleged* by the claimant, it must accurately portray the claimant in light of the ALJ's RFC finding so that the VE's answer to the question may be considered substantial evidence in support of the ALJ's decision. *See Ramirez*, 372 F.3d at 554; *Rutherford v. Barnhart*, 399 F.3d 546, 665 (3d Cir. 2005).

In response to Plaintiff's arguments concerning the inadequacy of the hypothetical, the Commissioner offers the claim, unsupported by any authority, that "the ALJ is not required to ask a hypothetical question that identically mirrors the RFC assessment." (Def. Br. 9). The

6

Commissioner further argues that Plaintiff failed to appreciate the difference between vision and visual acuity, but for the reasons that follow, this is of no consequence.

While a question posed to a VE need not use the exact language of the RFC assessment, "'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations in a hypothetical." *Ramirez*, 372 F.3d at 554–55 (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)). Furthermore, whether Plaintiff conflates vision and visual acuity—or, for that matter, whether the ALJ actually meant to indicate *poor* vision rather than no visual acuity—does not counter the defect in the ALJ's hypothetical. Rather, the issue is that the ALJ made a finding that Plaintiff's RFC reflected limitations including "*no requirement* for peripheral vision and visual acuity." (R. 19) (emphasis added). However, the hypothetical posed to the VE was for an individual with "*reduced* peripheral vision" and making no mention of visual acuity at all. (R. 46) (emphasis added).

At this juncture, it is important to reiterate that the validity or weight of the underlying evidence is not at issue. The ALJ's own determination as to Bennis's RFC, based on his own evaluation of the medical and other evidence, was not reflected in the hypothetical posed to the VE. Under these circumstances, the appropriate remedy is remand, as "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Burns*, 312 F.3d at 123 (citing *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984)).

Having determined that remand is appropriate based on the first issue, we do not address with any depth the question of whether it was improper for the ME to opine without hearing Plaintiff's testimony. However, the fact that the ME did not have the benefit of Plaintiff's

testimony raises questions about the completeness of her opinion and must be addressed on remand.

## V. CONCLUSION

Following upon a review of the ALJ's decision and the record of the hearing of November 8, 2019, we conclude that the ALJ erred in that the sole hypothetical posed to the VE did not reflect, with requisite specificity, the ALJ's own determinations as to Plaintiff's limitations and RFC. As such, we reverse and remand this matter for further consideration. To the extent that the ALJ intends to rely upon the testimony of a medical expert, the ALJ should ensure on remand that the expert has the benefit of hearing Plaintiff's testimony.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE